## DANIEL v. INTERNATIONAL AGR. CORPORATION et al.

(Circuit Court of Appeals, Fifth Circuit. October 9, 1923.)

No. 4127.

1. **Husband and wife** ☞129(7)—**Wife, remaining silent while husband explained condition of title, estopped to assert equitable interest.**

Where, to secure credit information, creditor's agent questioned debtor in the presence of his wife concerning title to land, and wife remained silent while debtor stated the condition of the title, *held*, that wife is estopped, as against credit given in reliance on debtor's statement of title, to assert an undisclosed equitable interest in the land, notwithstanding her later statement to agent that she was going to build a house on the land.

2. **Courts** ☞278—**Allowing defendant to amend held not to affect court's jurisdiction.**

Where judgment creditor sought to set aside alleged fraudulent transfers made by judgment debtor, and the court sustained the validity of a

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

security deed from judgment debtor to one defendant, allowing that defendant to amend his answer and ask for sale of the land to satisfy the lien *held* not to effect a change of position or affect the jurisdiction of the court.

3. **Equity** ⌐⟿392—**Refusal to reopen case to contest deed held in court's discretion.**

Refusing to reopen a case to allow one defendant to contest a security deed to another defendant, which that defendant had admitted in her answer to be a valid lien, *held* within the discretion of the trial court, and that the discretion was properly exercised.

4. **Appeal and error** ⌐⟿983(3)—**Mortgages** ⌐⟿509—**Time for selling under decree matter within discretion of District Judge.**

The time for selling under a foreclosure decree is a matter of business discretion, for the District Judge to determine, and is not reviewable on appeal.

Appeal from the District Court of the United States for the Southern District of Georgia; William H. Barrett, Judge.

Suit by the International Agricultural Corporation against Myra B. Daniel and others. From the decree rendered, the named defendant appeals. Affirmed.

Wm. H. Fleming, of Augusta, Ga. (Paul T. Chance, of Augusta, Ga., on the brief), for appellant.

E. H. Callaway, of Augusta, Ga. (W. M. Howard, of Augusta, Ga., on the brief), for appellee International Agr. Corporation.

E. V. Heath, of Waynesboro, Ga., for appellee Vinson.

Before WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. This was an appeal from a decree of the District Court in a cause in equity, in which the appellee the International Agricultural Corporation was plaintiff and the appellant, Myra B. Daniel, her husband, W. M. Daniel, the appellee Gary Vinson, and one Elias Daniel were defendants. The purpose of the bill was to subject certain real property, the legal title to which was in appellant, to the payment of a judgment, which the appellee International Agricultural Corporation had obtained against the husband of appellant, and to set aside certain alleged fraudulent transfers made by W. M. Daniel to appellant, to his uncle, the appellee Elias Daniel, and a security deed from appellant to Gary Vinson. The decree of the District Court sustained the judgment of appellee as a lien on the land as against appellant, sustained the security deed to Gary Vinson, and ordered the land to be sold under the security deed, and the proceeds of the sale to be applied (1) to the satisfaction of the security deed; (2) to the judgment of appellee; any balance to appellant. The decree is assailed by appellant because (1) the land was subjected to the judgment; and (2) the sale was made under Vinson's security deed, and at a disadvantageous time.

[1] 1. The land in question was purchased December 31, 1917, from L. J. Kilpatrick by appellant, either alone or with her husband. The purchase price was $16,000, of which $5,000 was presently paid, $3,000

⌐⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

claimed to have been furnished by appellant, and $2,000 by her husband. The balance was secured by a loan from appellee Elias Daniel, to whom a warranty deed was given by Kilpatrick; Elias Daniel executing a bond for title back to W. M. Daniel. All the $11,000 unpaid balance, except $3,000, was subsequently paid by appellant and her husband. In 1919 a house was erected on the land, with money claimed to have been furnished by appellant. To pay the balance due Elias Daniel, a loan of $10,000 was subsequently secured from appellee Gary Vinson, and a security deed given him on the land. The loan of Elias Daniel was paid therefrom, and he then executed a warranty deed to appellant for the land. On November 22, 1920, appellee W. M. Daniel transferred the bond for title he had received from Elias Daniel to the appellant, his wife. The indebtedness from appellee W. M. Daniel to the appellee International Agricultural Corporation was contracted in the spring of 1920, and judgment on it obtained April 29, 1921.

We think this feature of the case can be brought within a narrow compass. The evidence of the witness Cox, who sold the fertilizer to Daniel, representing appellee, in the spring of 1920, and which is the basis of the judgment, is as follows:

"He [Daniel] paid for the fertilizer I sold him in 1919, and I sold him again in 1920, and I made inquiry again, and he told me he only owed $3,000 balance on the land, and that his uncle, Elias Daniel, held title to the lands. This was in the spring at the time I sold him the fertilizers covered by this judgment. His wife was present. I had three or four talks with him at different times when his wife was present; she heard him state that that was the condition of the title more than once; she heard him state that in front of his house. I went there frequently, and I always stopped and talked with them. I asked him about it as a matter of credit information. The house requires that I make reports, of course."

The appellant testified, in answer to a question as to whether she had ever told Mr. Cox she had bought the place:

"No, sir; I was never in Mr. Cox's company about any business at all."

She also testified that she told Cox that she was going to build her a house on the land. Appellee W. M. Daniel did not deny Cox's evidence, or refer in any way to it. At the time of the conversation, to which Cox alludes, the bond for title had not been transferred to appellant, and the legal title was in Elias Daniel, to secure an unpaid balance of $3,000. At that time the appellant had already expended whatever she ever may have expended in the construction of the house on the land.

The evidence of Cox is to the effect that, to obtain credit information, and before the debt, on which the judgment is based, was contracted, he asked Daniel, in the hearing of appellant, as to the title to the lands, and was informed by Daniel that Elias Daniel had title to secure a balance of $3,000; that he owned the lands, subject only to this incumbrance. At this time he did hold the bond for title, which Elias Daniel had given him. It is clear that, if Mrs. Daniel, the appellant, then owned an interest in the equity of the land, and the conversation is as testified to by Cox (and the record shows no direct denial of it), she was bound to assert her title, or be thereafter estopped from doing so,

as to credit given in reliance on Daniel's statement as to the condition of the title, made in her hearing and not disputed by her. Silence, when such inquiries and replies were made in her hearing and for such a purpose, is as effectual to create an estoppel against her as an affirmative statement that her husband owned the land would have been. Its misleading tendency would be the same.

At the time it occurred, if she owned an undisclosed equity in the land, it was her bounden duty to assert it as against the apparent ownership of her husband, evidenced by his statement to Cox, when she knew he was falsely asserting ownership as against her, and to obtain credit thereby. Having then held her peace, it is elementary that, as against the indebtedness so created, she will not now be permitted to assert the truth. If she remained silent when called upon to speak, she "did," by her omission to speak, something to induce a belief that her husband owned the land, within the meaning of that word as used in the cases relied upon by appellant in her brief. In view of the fact that the money appellant claims to have spent in building the house was then expended, and her interest in the land on that account, if any she had, had then accrued, she is equably estopped as to that expenditure. The previous statement, alleged to have been made in 1919, to Cox, that she was going to build her a house on the land, would not charge him with knowledge that she was going to build on her land, or with her money on her husband's land, or that she intended to claim an interest in the land by so doing. It is equally to be interpreted that she intended to build with her husband's money on his land.

[2] 2. The appellant also attacks the decree because the land was ordered sold under the lien of the security deed of Gary Vinson, instead of under the judgment lien of the International Agricultural Corporation, and without sufficient delay. Vinson was made a defendant to the original bill, and his security deed attacked as fraudulent. The appellant, in her answer, in which Vinson joined, asserted the validity of the security deed, and of the loan it secured. The court sustained the validity of Vinson's deed as against plaintiff's attack upon it. Vinson then, by an amendment to his answer, set up facts that matured his debt, and asked the court to sell the land to satisfy his lien. This the court did. Appellant complains of the decree that, by permitting Vinson to change sides, jurisdiction was lost. Permitting Vinson to seek and obtain the foreclosure of his lien, under his answer, did not effect a change of position, or affect the jurisdiction of the court.

[3] Appellant also says that the District Court erred in refusing to reopen the case and to permit her to assail the validity of Vinson's security deed. Her answer had asserted its validity. The deed was affected with usury, but the District Court purged it of all interest and allowed a decree alone for the principal. It was within the Court's discretion to refuse to reopen the case for the purpose of allowing appellant to contest a deed which she had admitted in her answer to be a valid lien on the lands, and the discretion was rightly exercised.

[4] Appellant also complains that the sale was fixed for February, which was an unfavorable time for it. The time for selling under the

decree was a matter of business discretion, for the District Judge to determine, and not reviewable here.

No error appearing in the record, the decree is affirmed.